Ladies and gentlemen, please rise. This court is now in session. Please be seated. The clerk will call the case.  Good morning, Justices. Jerry Vinkler for the Plaintiff Appellate. The issue before the Court is in regards to a libel case, whereby the plaintiff in the case had summary judgment brought against him. The summary judgment was granted by the trial court, and so, granting the motion for summary judgment, the trial court ignored three basic requirements for actual malice. I'm sorry, Mr. Vinkler, there's things going in here. Could you possibly move those microphones closer to you? I can't. I apologize. I'm struggling with a couple of antibiotics and things, so I will do my best. Why don't you grab some water before you go further, behind you, and bring it up with you. Are you having a hard time also? No. I don't mean you, I mean, period. No, no, no, that's cool, but I'm just going to get him some water. I'm just having a hard time. Thank you. Maybe I have something in my ears, too. I will do my best to do so without coughing. Not a problem. So, as a libel case, we have to talk about what actual malice is. There are three different ways by which actual malice is known. The first is knowledge of the false statement. The second is that there is reckless disregard as regards to that. Now, there are two separate elements of reckless disregard. There are two separate and independent ways whereby reckless disregard will show actual malice. The second would be whereby there is insufficient information to support the defamatory accusation in good faith. That second was not addressed by the trial court either, nor by the defendant. Both of those have been met in this case, as I was shown by the record or by actual testimony or whatever it is that you would like to see. The third way by which to show actual malice, which is reckless disregard as to the truth of the accusations, whereby there is substantial doubt. That third element, the subjective element, is all the trial court looked at. By doing so, the court only looked at the Burns case, which made an improper analysis. The Burns case said that the only thing that you have to do is where the evidence shows the defendant, in fact, entertained serious doubts. The Burns case didn't talk about actual malice, nor talk about where there is a difficulty in regards to insufficient information. Instead, this is the only way by which you can show actual malice. It's not the law. I brought that up to the court during our motion for reconsideration. The court did not consider it. That would be for your position to review what the trial court did. Summary judgment is, in fact, to know or to look at what, in fact, had happened. In this instance, we see that the court did not look at actual malice. Once facts are brought out, the defendant had knowledge of the statements, and they were false. The inquiry ends. I could go into that now with specifics in terms of the testimony that I read to the court, but the court did not take into account at all. So your position is that Corbett's deposition gives you the tribal issue by itself? Yes. The actual statements, I could go over in depth. If we were to, just to be sure we're clear, because sometimes the facts can be a little difficult in going through some of the motions. In our candidate, Mr. Grasso, during the time that he lived in DuPage, had a DuPage residence. He also had bought a condominium for his children, and during a period of two years, the condominium showed up as having assessments that would, in effect, allow an exemption. Those two years showed up by a search done by Mr. Corbett. He hired a company to find out, in effect, what in campaign would be mud-raking, what information could we have to find out what we can on this candidate. So the information he got for Cook was two years of these exemptions. He then found DuPage, he had the period of time for the DuPage, he chose to see in those records those six years of exemptions, and then published a document, this was Mr. Corbett, on behalf of his candidates hiring him, to say that the total amount of exemptions he claimed appropriately were six years. He stated in his deposition, I knew there were two years in Cook, and I knew there were six, but I said six because it's up to you to say I'm wrong. And that's what he said in his deposition. And so as a result, when you have that information, that knowledge of falsity, that equals actual malice. Yes, Justice, that is exactly what we are saying. The second portion would be in regards to there being substantial, I'm sorry, insufficient information to support the defamatory accusations. Those same statements taken from the deposition, Mr. Corbett said, I had this information. If you take a look at some of the cases that have been brought to you in libel, many of them involve where there is no actual malice even suggested. There is really no case in Illinois that has these facts that are so clear. So as a result, everybody glosses over actual malice, meaning knowledge of falsity. It goes right to reckless disregard, which is what the trial court also did, which is what Burns did. So if you get to the second area for reckless disregard, which proves actual malice, that first part regarding insufficient information, the court also did not address that at all during argument or in his order. I asked him to during argument, and he did not do so. The deposition supports also that he had insufficient information to make the statement there were six years of exemptions that overlapped two years in Cook County. The opposite actually is the case. He knew they did not overlap. And as I could read in the deposition again, he clearly stated, I didn't care. Those were his words, and it's up to you. He was speaking to Mr. Grasso, who was opposing him at the time, acting pro se for himself. And at that time he said, it's up to you to correct me. So we were left with what happened in the trial court. Reckless disregard can be used to show actual malice in one of two ways. The Burns court, Warnless, and the other court states that it can be one, in particular Costello, at 421, states that defense investigation is revealed either insufficient information to support the defamatory accusations of good faith or creates a substantial doubt as to the truth of these accusations. So when one says there's only one way to prove that, that's not the law, and what the court said was incorrect by relying upon an improper statement in Burns. So now we get to this last area. What is it the court actually looked at? The court looked at what is one of the most difficult things when it comes to what is considered to be subjective evidence as opposed to objective. Whenever it is that anybody says, I didn't think that, there's no way by which to consider what they say unless they're subject to the power and tool of cross-examination and the ability to address their credibility. There's no other way to do that. In the cases that the court had before them, the Coursey case was summary judgment, but it ended up being reversed. There was no actual evidence. All the other cases involved testimony whereby the court had the opportunity to gauge the credibility of the witness. I could come up and say anything, and I would ask you to believe me. Did you believe at the time that you read that you thought that it was true? Yes, I did. That simple statement is enough for what the court relied upon. We ask the constitutional protection of cross-examination that allows us to ask, what is it you were doing and thinking? Not just a deposition. Depositions are not cross-examination. They're not a trial. Once we have that assessment as by the tool of cross-examination, then we can get to the root of what really happened. That has been taken away from us by the court granting summary judgment. I could go into each particular element to which actual – I'm sorry, actual is the wrong word – to which knowledge of falsity showed actual malice, as the court would like. It is in the briefs. It is in the record. I can go through where it was stated specifically in regards to there was insufficient information to say six years over two years. If we get to the substantial analysis, which is all the court looked at, what we have left is merely allowing Mr. Corbett's statements, unrebutted, to stand on their own to say, I have no knowledge, but they are rebutted by his own testimony in the deposition. He said at various places, I did read this. We're not talking about a situation like Hargrove in the Costello case or in any of the Supreme Court cases, whereby somebody didn't actually look. In this case, Mr. Corbett not only got the documents, but he said, I looked at the Cook County assessment stuff. I looked at the DuPage stuff. So he can't say that I didn't know the truth of it. And if he did, his credibility must be taken into account and weighed by the court in effect to try our fact. I would submit, Your Honors, that each of the three elements for actual malice, knowledge of falsity, insufficient information, and substantial doubt in regards to the truth all have been met. The first two were never addressed by the court. That was error, and I ask that that be reversed. I would be open to any questions. If there's anything you would like me to address. I haven't heard any argument about the statements in the flyers with regard to defrauding the government and penalize. Is that not an issue in this court, the 1.5% assessment for late taxes? Yeah. Those flyers are difficult to simplify, but I'll do it in this way. We take into account, first of all, there are three flyers and three different dates. The second flyer is the only one that we will address for purposes of this appeal. In it, Mr. Corbett, through the publication he had with Corbett, from Core Strategies, said that Mr. Grasso defrauded the government by taking $36,000 in exemptions. And then he listed footnotes for both Cook County and for DuPage, actual knowledge. Now, by saying 36, he has in fact taken $6,000 per year for DuPage times 6 equals 36. He was asked that in his deposition, and he admitted, yeah, that's what I did. The court was asked about this specifically when I argued this before the trial court. And the trial court said, wait a minute, if you got $36,000 of claim, but there were two years of overlap, wouldn't it have been okay to say $12,000? To which I responded, exactly. That would have been a proper, true statement. And the court response was, well, so what? In particular, the court stated this, quote, a $24,000 difference when he was putting in his pamphlet to fraud the government by taking more than $36,000. That's enough in your estimation to turn this into a defamation case and proceed to trial? That showed the court was taking quantity over quality. The quality of the statements were false. To say that there was $12,000 that were true but $24,000 was false, why should we go ahead and try it on the difference? That is not the analysis by all the courts, be it by the U.S. Supreme Court or by any of the appellate courts or by this Illinois Supreme Court. And I think if you look at Corsi, where the summary judgment in favor of the defendant was overturned, a police commission found an officer guilty of four or five and then was convicted or found guilty of all claims. Yes. That's, I guess, a corollary. That's exactly what I argue on it, and I appreciate you picking up on that. But my question was before, you're not addressing the 1.5, 1.5 percent penalty, those statements. Just we're zeroing in on this. Yeah, there is no question there would have been a 1.5 percentage penalty. Yeah, and they called it a penalty. Yeah, that ends up being so common. You called it interest. I think it's a penalty. Yes, sir. But you're not addressing that. No, I don't. I didn't see how that could come into play here. Okay, thank you. That's what I wanted to say. Yes. If there was anything else. Thank you, Justice Anderson. No, thank you. Anything further, Justice DeFranco? No, thank you. Thank you, sir. Thank you very much. Thank you. I'm going to reply. Thank you. Counsel? Good morning, Mr. Grant. Good morning, Justices. Counsel, may it please the Court. It pains me to say as an officer of the Court that sometimes it's not necessarily about the truth of something that gets at the heart of liability. In this particular case, just like in Costello, it's not about the truth of the actual statements. So what is the issue? The issue is whether there is actual malice involved in those statements. And that was defined by the United States Supreme Court in New York Times and Sullivan and in Illinois with Costello v. Capital Cities Communication. In order to successfully get past the appellee's motion for summary judgment, the appellant must show that the appellees had a reckless disregard for the truth or knew the statements were false. At the very least, that they had a substantial doubt as to the truth of the statements. And not by a standard that they should have known or an ordinary person would have known, but in fact, they did know subjectively. But it gets harder. This must be shown by clear and convincing evidence. And it's a very high bar, and there's a reason for that. This goes up against one of our most sacred constitutional tenets, freedom of speech, and to make it even worse, political speech. Counsel, I want to ask you about this Corbett affidavit, which I think your case, in large part, hinges on. It seems to me, and I suppose you could disagree with me, but it seems to me that it's a self-serving affidavit. And of course, it's made by an interested party. There are cases out there that state that a self-serving affidavit made by an interested party is insufficient to either support or to defeat summary judgment. The cases I've read don't really say why, but it seems to me that it's because even an uncontradicted affiant could lie. And so it seems to me that the idea is that you put that person on the stand in front of the trier effect, and even though their statement is uncontradicted, maybe a judge or a juror just doesn't believe it. Is that an unfair way to look at it, that you could be lying in an affidavit and still be uncontradicted, and a judge should be able to look at you and say, no, I don't believe you? Justice, I, for one, would suggest that my client is not lying, but in the most general sense— I'm not saying whether he's lying or not. I don't know. In the most general sense— I didn't hear him testify, and neither did the judge in this case. That is correct. In the most general sense, I do agree that self-serving affidavits have their issues and their time and their place. However, there is a mountain of other evidence. Plaintiff, for example, in this particular case, has no evidence. The entire case rests upon the evidence they can provide by interpretive dance of the defendant's case. And the fact remains, we also have a deposition where they got to ask the questions, and the questions were asked directly, and I will get to that in my statement. Right, but my point is that I could read a deposition transcript and really have no idea whether the person seems credible or not. When they're testifying in front of you, that's a different situation, is it not? It does indeed, but it doesn't necessarily create a material issue of fact. And in this particular case, again, there was a deposition where the other side was allowed to question my client, and the trial judge did evaluate all of it inasmuch as—  I apologize? On paper. Yes, Your Honor. But the biggest problem that the appellant has in this case is there is simply no evidence of what they're suggesting. Yes, there— But you agree, you agree, sir, do you not, that a state of mind can be proved through circumstantial evidence? Yes, I— And case laws replete with the fact that, and especially in cases such as this, you can actually go through the circumstantial evidence to determine the defendant's state of mind. I don't disagree, Justice. Okay. Thank you. However, the deposition does go through all of that. And, in fact— And timing of all the timing of when the information was available and when — how many years were involved and when that information became available and when it was subject to discoverability, all that became available and when it was known to the defendants becomes important as to when the information was published, correct? Yes, Justice. And in this particular case, all the information was verified before it was published, which is critically important, showing subjectively that the appellees did not subjectively think the information was false. They verified it. How on paper was the conversion of 12,000 to 36,000 verified? On paper, because that's what we're talking about. Yes, Your Honor, I don't know that I can necessarily account for my client's math, but a math error, and again, the truth of the numbers, is not what's at issue before you. The question is, by actual malice, did they subjectively believe that those numbers were false? And you tell me what you mean by subjectively. We can consider recklessness, all right? That is correct, but again, it is subjective. What do you mean by subjective? I'm sorry. They have to personally believe, not whether one of us might believe, not whether a math professor would, not whether an ordinary person would. Did they personally, individually, think that it was false? They did not.  I mean, but that's the end of the case. That can never have been rebutted when they say, I don't remember. Well, there's a reason that in political cases you don't see, for example, a mountain of this litigation after every single election cycle. There would be a specialty court that would have to deal with all of the questionable this, you characterize this, there's an opinion of this. None of us are immune from what's hampering the election cycle. But the fact is, the bar is very high, except by the New York Times case, that says, look, we are not going to breach this. There has to be such an egregious lack of evidence here. There has to be such a subjective belief where they knew they were wrong. And, in fact, the court talked about Corsi. In the Corsi case. But it isn't a question of, I'm not talking about the issue being the attack on the individual, Mr. Grasso, because his standing has to be such that we all agree that he was a public official. That's not the issue. The issue is whether they subjectively believe this. So is the issue, what is their standing, is really almost irrelevant. Could they be smart? Could they just be stupid? Okay, is really irrelevant at this point. So when you say subjectively, what did they believe? Did they just not get it? Were they bad at math? Is that what your point is? It actually. Were they just dumb and they didn't figure it out? Respectively, Justice, if it means that my client skates by on subjectivity, math may not be their strong suit. However. And that's a defense? No, but it is a defense to subjectivity. Did they believe subjectively that the information they put out there was false? Right. The answer is no. Counsel, there's a reason we all went to law school. It's because we can't do math. There's no math section on the L side, but that doesn't mean that your client can't, and it doesn't mean that necessarily that a judge should look at a piece of paper and determine whether your client can do math or whether your client can tell the truth. Yes, Justice. So the only issue on that point is whether they subjectively believed it was false, and they didn't. That is the only issue in this case. How do we know that? Because you have it from the defendant only and from the circumstances. You have his testimony. So can we go back to Justice Bertani's question of how did they get from 12 to 36? I don't know, Justice. But how did they know? How did they do it? I don't know. And, in fact, it's not relevant to whether there was actual mouse. The question is, however they got there, did they subjectively believe it was false? And the answer is no. And question specifically in the deposition, because it's difficult to read someone's mind. So wasn't that a triable issue at FACT then? No, because they were asked. They were asked. If defendants believed any information that it used to be false, would it have been used? No. There is nothing to refute this. Well, I mean, how about elementary, second-grade math? I mean, there's nothing to refute that $36,000 was wrong? I mean, we have him in his deposition saying, I looked at Cook County. There were two years, 16 and 17 or 15 and 16. I looked at DuPage. There were six years. Thus, I did 6 times 36 to come up with the math. I mean, can't that refute his, I guess in Judge Anderson's words, alleged self-serving statement that I didn't know, or what he said repeatedly in his deposition, I really don't know what was in my mind at that time. Does he get the justicium or pass? Or can it be refuted by that circumstantial evidence that I just suggested? Your Honor, the absence of, Justice, the absence of evidence is not evidence. Our case is that there is no evidence from the plaintiff that the defendant subjectively believed that their information was false. And, in fact, moreover, they were asked at deposition if they believed it was false. Would they have used it? No. They didn't have to do an investigation pursuant to Costello. Costello says an investigation can only be done if the defendants subjectively entertained serious doubts about the truth of the statements. But they did an investigation. They did an investigation. It's all over the record that they looked at all the information again through other sources before publishing. They used statements from a third-party report. In his deposition testified that they further verified the information they provided, verified through direct government information and reports. It's all over the case. Moreover, there's no case from the plaintiff to contramand any of this. There's a tremendous amount of evidence that defendants subjectively, by clear and convincing evidence, believe that this to be true. What there is not, by subjective clear and convincing evidence, is that the appellant has anything to suggest to the contrary. And Corsi of your Greater Niles Township, you distinguished that particular case. Greater Niles Township was reporting as a commission. They were reporting on the results of the hearing. They literally, in their report, made up information. They made up information. Oops, sorry. They made up information reporting on the hearing. That's where they got nabbed. That's not in this case. And how do you define the concept of tax breaks versus assessments versus penalties? Different concepts, different words. True enough, Justice, but this is, again, political speech and freedom of speech. The question is whether, on all of those issues, the defendants believed subjectively, by clear and convincing evidence, not by maybe, that their statements were substantially false. So in this particular case, the defendants in this case did not believe the statements were false, clearly. They did an unrequired investigation to substantiate the statements. The investigation did not create substantial doubt as to those statements. It's a very high burden, and it's ugly in politics, and we're all very aware of it. But ugly isn't always defamatory. I will quote from the very well-written order from the trial judge in this case. Even in light most favorable to the plaintiff, there is simply no clear and convincing evidence that the defendant entertained serious doubts. The case is unfortunate, and the court is sympathetic to the plaintiff. This is the problem with campaigns in general and the nature of politics, but the actual malice standard is a formidable one. Reckless disregard for the truth may only be found where the evidence shows the defendant, in fact, entertained serious doubts. Based on the record, the plaintiff cannot meet that burden. And the judge made a good-faith finding in whether the record was sufficient to cross the constitutional threshold and support judgment by clearing convincing evidence of actual malice, pursuant to Costello and Bowes and St. Amant cases. And he found against the plaintiff. The evidentiary bar is extraordinarily high for a reason, or else there would be thousands of these cases in front of every court, every single election cycle. And we are in the midst of this silly season in politics where everyone will throw barbs back and forth. This is simply the reason that this doesn't cross the First Amendment threshold and does not run afoul of political speech. Accordingly, if there's no other questions from your honors, we ask that you affirm the trial court and affirm granting the defendant's motion for summary judgment. Thank you. Justice Anderson, any other questions? No, thank you. Thank you. Thank you, counsel. Thank you, counsel. Thank you, Mr. Binkler. Your Honor, questions and points directly to the facts are very salient. I'd like to answer the question that Mr. Green couldn't. If this is just math, how come it is that you didn't do it and you said you couldn't answer that? In fact, Mr. Corbett answered that. It's in our brief. It's in the motion for reconsideration. It is taken from page 96. Question, when you say defrauded taxpayers out of $36,000, what was the basis of that statement? Those were the government documents showing the double homeowners exemption that was taken. So there would be the homeowners exemption of $6,000 for six years. That appears to be the case. Yes. On the due page property, the math on that checks out. Yes. As we went through this, page 92, he said that he got all the information from Cook County. He personally looked. And he clearly would know from the Cook County records he only showed two years of exemptions. And he said six years. So he knowingly printed false information. Knowing false information is actual malice. As the court indicated, is it important that this was called tax fraud when, in fact, it was perhaps interest or something else? And, of course, it is because the statement, as the court pointed out, is that it actually said tax fraud. That's what the mailer said. Accusing them of $36,000 of tax fraud. There cannot be an area whereby you can use hyperbole and then say, well, gee, I didn't mean it that way. When you clearly know that you are pushing what is the fact to something that is not true. Again, we talk about quality versus quantity. Quality of these statements are clearly false. The fact that it goes from a certain amount to be looked aside, as the trial court did, isn't the purpose of what the law of defamation is. Law of defamation is very clear. If you have knowledge, as shown by these documents, then you cannot claim that I wasn't thinking that at the time. Using that third possibility of reckless disregard. As Justice Anderson pointed out, and I said at the beginning, the most powerful tool we have is cross-examination. Without saying anything in regards to Mr. Brin or his client, it is what is the rubric of our trial system. And so as a result, I would ask that we be allowed to at least cross-examine him. At the worst, what would happen is that the defendant could bring a motion for directed verdict, and the court can entertain at that time whatever it thought in terms of credibility. That would be just. That would be appropriate. U.S. Supreme Court in Bose, court versus consumer, said that the protections that exist do not extend because, in certain areas, they are no essential part of any exposition of ideas and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality. Mr. Corbin is in the business of finding information on candidates to whatever word you want to use. Sully their reputation, to denigrate them in some fashion. It does nothing to pursue the ideas of a just democracy or to talk about issues. When you go to a person's own homestead, it has nothing to do with his office. And then to claim it's a tax fraud when it wasn't even that. It was an assessment. It's not a tax fraud, as the court pointed out. This is a matter of public policy. The trial court specifically said, certainly a problem with campaigns in general and the nature of politics. When it is that any value would be derived by giving Mr. Corbin and core strategies the benefit of the doubt, it is of such slight value compared to the social interest in order and morality. And I know that's a big word to use nowadays, but it actually is what our law is. It is what Bo said in the U.S. Supreme Court, what the supervising court must look to. In effect, the court is a gatekeeper for what libel claims can be allowed, but is not to bar all of them. And that's kind of what we're hearing from the defendants. They're all barred because, in effect, you can just say I didn't mean it and I didn't understand it and I didn't think it was false. I would ask this court reverse finding of the trial court on all three grounds. The knowledge of falsity was there, that there was insufficient information to have published at all, and that the third, which is the value of records disregard, that there was clearly substantial doubt and it cannot be done away with by simply saying I didn't think so. Unless the court has any questions, I have a red light, and I will go sit down. Thank you. Justice Sanders, do you have a question?  Justice Bertoni? No, thank you. Thank you. The court will stand in recess. We'll issue an opinion based in due course.